# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **In re:** | Case No. 3:20-mc-1070-SI |
| **PETER SZANTO**, | Bk. No. 3:16-bk-33185-PCM |
| Debtor. | **ORDER** |

**Michael H. Simon, District Judge.**

On October 1, 2020, the United States Bankruptcy Court for the District of Oregon (Bankruptcy Court) transferred Peter Szanto's (Szanto) "Motion for Stay of All Proceedings Pending Appointment of Counsel based on Efforts at Incarceration of Peter Szanto as Stated in Docket # 1011" to this Court. On October 19, 2020, the Court stayed the Second Motion for Contempt (Contempt Motion) filed in the Bankruptcy Court by Candace Amborn, the Chapter 7 Trustee (Trustee) until the Court resolved Szanto's motion for appointment of counsel. The Court requested that Szanto file information about his indigency by completing the District of Oregon's *in forma pauperis* form. The Court also requested that the parties brief issues relating to when the Constitution may require the appointment of counsel in a civil contempt proceeding. Specifically, the Court requested briefing based on concerns that: (1) the Trustee requested unconditional incarceration of Szanto, even if he complies with the Bankruptcy Court's underlying order, thereby creating the potential that if the Bankruptcy Court imposed such

sanctions, the contempt proceeding could be considered punitive and criminal instead of coercive and civil; and (2) the Trustee is represented by counsel and Szanto is not.

Regarding Szanto's indigency, Szanto filed the requested form and the Trustee responded by generally challenging Szanto's credibility. The Trustee did not, however, provide any specific challenge to Szanto's purported finances or assets or offer any evidence relating to Szanto's asserted ability to pay counsel. The Court, therefore, finds that Szanto has demonstrated indigency for purposes of his motion for appointment of counsel. This finding is limited only to the pending motion for appointment of counsel.

In responding to the Court's concerns about the merits of Szanto's motion, the Trustee withdrew the portion of her Contempt Motion, pending before the Bankruptcy Court, requesting unconditional incarceration. Szanto then expressed concern that the Trustee withdrew that portion of her motion before this Court but not the Bankruptcy Court. The Court makes clear that the Court is relying on the Trustee's statement that she has withdrawn that portion of her Contempt Motion in resolving Szanto's pending motion for appointment of counsel. If the Trustee had not withdrawn that portion of her Contempt Motion, the Court would appoint counsel to represent Szanto without further analysis, based on the cases cited in the Court's previous Order. *See* ECF 6. Judicial estoppel, therefore, precludes the Trustee from changing her position before the Bankruptcy Court, and this equitable doctrine applies in the Bankruptcy Court. *See, e.g.*, *In re Gangestad*, 358 B.R. 394, 396 (Bankr. D. Or. 2006) ("In order to make out a case for judicial estoppel, the trustee would have to establish that OSU has previously prevailed, by taking a contrary position in another judicial proceeding. Here, no court has been involved in OSU's decision not to release its lien. Trustee has not argued that OSU has previously taken a contrary position in a different legal proceeding." (citation omitted)).

PAGE 2 – ORDER

Szanto now argues that he has a right to counsel because he is facing indefinite incarceration, even if he complies with the Bankruptcy Court's order to sign the documents at issue. The Trustee's withdrawal of her request that Szanto remain incarcerated despite complying with the Bankruptcy Court's order negates that argument. Szanto also argues that he requires counsel because he already signed the document two years ago when there was a different Trustee and yet the current Trustee filed the Contempt Motion. If this is true, then it is a merits-based defense to the Contempt Motion before the Bankruptcy Court, not a basis on which this Court should appoint counsel. Szanto would not be in contempt if he signed the form as ordered by the Bankruptcy Court. Additionally, if Szanto already signed the form, then it should pose no hardship on Szanto to sign a second copy of the document. If the first Trustee did not provide the signed document to the second Trustee, then Szanto can easily end the Contempt Motion by signing a second copy of the document. The Court notes, however, that although Szanto argues in his brief that he signed a copy of the document, Szanto does not state this fact under oath. Nor does Szanto present a copy of the signed document to the Court, or present a receipt from FedEx or some other shipping method showing that he sent the signed document to the first Trustee, when he was ordered by the Bankruptcy Court to send the signed document by a trackable shipping method. In any event, Szanto's argument that he already signed a copy of the document does not support his contention that the Court must appoint counsel because the argument merely serves to highlight how readily it is within Szanto's power to avoid incarceration.

Szanto further argues that he needs counsel because it is unknown what the Trustee might say before the Bankruptcy Court and because the Bankruptcy Court is biased against Szanto and may engage in unfair adjudication and punishment. The Court rejects this argument as a basis for

mandatory appointment of counsel. Based on the Trustee's withdrawal of the portion of her

motion seeking unconditional incarceration, the Trustee is requesting that the Bankruptcy Court

incarcerate Szanto until he signs the document as previously ordered by the Bankruptcy Court. If

the Bankruptcy Court were to grant the Trustee's motion and were to impose incarceration as a

sanction, that would be the degree of incarceration. It is fully within Szanto's control whether he

would be incarcerated, and for how long. This is the hallmark of a civil contempt proceeding.

*See, e.g.*, *Turner*, 564 U.S. at 441-42 (explaining that the purpose of a civil contempt sanction is

"to coerce the defendant to do what a court had previously ordered him to do" and that "once a

civil contemnor complies with the underlying order, he is purged of the contempt and is free"

(simplified)); *Shillitani v United States*, 384 U.S. 364, 368, 371 (1966) (stating that because "the

justification for coercive imprisonment as applied to civil contempt depends upon the ability of

the contemnor to comply with the courts order," it is often said that in a civil contempt

proceeding, the contemnors carry "the keys of their prison in their own pockets"); *Lasar v. Ford

Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005) ("A civil contemnor carries the keys of his

prison in his own pocket because civil contempt is intended to be remedial by coercing the

defendant to do what he had refused to do." (quotation marks omitted)); *Richmark Corp. v.

Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992) (explaining that civil contempt

sanctions are "intended to coerce the contemnor to comply with the court's orders in the future"

and that "the sanction is conditioned upon continued non-compliance").

The Court's final concern with Szanto proceeding *pro se* to defend the Contempt Motion

in Bankruptcy Court involved issues with adjudication in a civil contempt proceeding in which

the deprivation of liberty is at stake and one party is represented by counsel and the other is *pro

se*. This concern arose from a comment by the Supreme Court in *Turner v. Rogers*, 564 U.S. 431

(2011). The Supreme Court in *Turner* explained that appointed counsel is not automatically required in all civil cases in which incarceration is threatened. The Supreme Court, however, distinguished *Turner*, in which both parties were proceeding *pro se*, from other cases when appointing counsel might be appropriate because the government would be the opposing party and "[t]he government is likely to have counsel or some other competent representative." *Id.* at 449 (citing and quoting *Johnson v. Zerbst*, 304 U.S. 458, 462-63 (1938) ("[T]he average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, *wherein the prosecution is presented by experienced and learned counsel*." (emphasis added in *Turner*))).

*Turner* instructs that in a civil case, a court "determine[s] the specific dictates of due process by examining the distinct factors that [the Supreme Court] has previously found useful in deciding what specific safeguards the Constitution's Due Process Clause requires in order to make a civil proceeding fundamentally fair." *Turner*, 564 U.S. at 444 (quotation marks omitted). These factors include "(1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements." *Id.* at 444-45 (simplified).

In *Turner*, the Supreme Court stated that the private interest at stake, "an indigent defendant's loss of personal liberty through imprisonment," "argues strongly for the right to counsel" advocated in the child support payment contempt proceeding at issue. *Id.* at 445. The Supreme Court explained that this was mostly because of the "key" issue of "ability to pay" that was at stake. *Id.* The Supreme Court cited several authorities on erroneous decisions involving ability to pay. *Id.* The Supreme Court determined that three considerations, taken together,

outweighed the due process concerns supporting providing counsel in child support back payment contempt proceedings. The first is that procedural safeguards can be put in place relating to evaluating indigency and ability to pay early in the support proceedings. *Id.* at 446. The second is that proceedings involving two *pro se* parties do not support appointed counsel, and might actually "create an asymmetry of representation," as compared to one *pro se* party and one government party represented by counsel. *Id.* at 447. The third is that there are substitute procedural safeguards to an automatic right to counsel, including notice to a defendant that the ability to pay is a critical issue, the use of standard forms to obtain critical financial information, providing an opportunity at any hearing for a defendant to respond to questions about the ability to pay, and requiring the court to make an express finding that the defendant has the ability to pay. *Id.* at 447-48. In so concluding, the Supreme Court stated that it was not addressing civil contempt proceedings involving the State, because "the government is likely to have counsel or some other competent representative." *Id.* at 449. The Supreme Court also noted that it was not addressing "what due process requires in an unusually complex case where a defendant can fairly be represented only by a trained advocate." *Id.* (quotation marks omitted).

Keeping in mind the instructions of *Turner*, the Court first finds that the Contempt Motion does not involve an unusually complex case. Although Szanto argues that his *bankruptcy* is complex, the Contempt Motion is not. It involves an argument that Szanto is in contempt because he refuses to sign a form that the Bankruptcy Court directed him to sign. Szanto asserts that he signed the form two years ago. If he can prove that contention, he can easily prove that he is not in contempt. It is also unclear why if he did previously sign that form, he refuses to sign the form again. Szanto has variously argued that his signing of the form would be meaningless because he is not the owner of the bank account, that it is moot because the funds have already

been released from the account to the Trustee under order by the Singapore Court, and that he has already signed the form. Under any of those arguments, it would appear to be harmless for him to sign the form again. Regardless, the issue of signing the form is not complex.

Considering the other factors discussed by the Supreme Court in *Turner*, the Court agrees with the Trustee that although the general private interest of potential incarceration is at stake and is a significant interest, the more worrisome problem of incarceration based on erroneous determinations relating to the ability to pay is not at stake in this case. What is at stake is incarceration based on whether Szanto signed a form as ordered by the Bankruptcy Court. That is a much more straightforward question, not subject to the type of mistaken analysis that drove the Supreme Court's concerns in *Turner*. The "keys" to Szanto's incarceration are more solely within his own hands than in the case of defendants who may not have the ability to pay child support payments as ordered. Thus, under the facts of this case, simply because the Trustee is represented by counsel and Szanto is not, does not by itself, require the appointment of counsel.

The Court also is persuaded by the fact that the procedural safeguards discussed in *Turner* have been and will be provided to Szanto. The Bankruptcy Court and the Trustee provided Szanto with notice of the Contempt Motion, of what the issues are (the need for Szanto to sign the form), that he will be given a hearing, and that he will have the ability to answer questions at the hearing. The Court expects that the Bankruptcy Court will make appropriate findings about whether Szanto signed the form as ordered by the Bankruptcy Court, thus addressing Szanto's argument that he is, in fact, in compliance with the Bankruptcy Court's order and is not in contempt.

Szanto also requests leave to file a motion for Rule 11 Sanctions against the Trustee for filing the Contempt Motion. Such a motion would not be appropriate in this Court. The

Contempt Motion was filed in Bankruptcy Court. This Court is not resolving the Contempt Motion. This Court is resolving Szanto's motion for appointment of counsel. Szanto's request to file a Rule 11 motion is DENIED.

Szanto further requests leave to file another motion to withdraw the reference to the Bankruptcy Court. This is fourth time Szanto has sought to withdraw the reference to the Bankruptcy Court. The Court denied Szanto's motion to withdraw the reference on May 1, 2019, his motion for reconsideration on August 26, 2019, and his second motion to withdraw the reference on January 23, 2020. Szanto's request to file another motion to withdraw the reference is DENIED.

Based on the specific withdrawal by the Trustee of the requested sanction in the Second Motion for Contempt that the Bankruptcy Court incarcerate Szanto for the duration of the bankruptcy and the representation that the Trustee now solely requests as an incarceration sanction that Szanto be incarcerated until he signs the documents as ordered by the Bankruptcy Court, this Court finds that the requested sanction is coercive but not punitive. The Court therefore finds that the contempt proceeding is civil in nature. The Court also concludes that the underlying issues specifically relating to the alleged contempt are not so complex that Szanto, proceeding *pro se* against counsel, would be deprived of due process rights absent appointed counsel in light of the other procedural safeguards Szanto has been provided. For these reasons, Szanto's motion for appointment of counsel is DENIED.

**IT IS SO ORDERED.**

DATED this 7th day of December, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 8 – ORDER